UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Hung Thanh Vo,
     *Petitioner*,

       v.                                Case No. 1:25-cv-533-JL-TSM

Todd Lyons, et al.,
     *Respondents.*

### MEMORANDUM ORDER

This motion for immediate release from Immigration and Customs Enforcement ("ICE") detention, brought in the context of a habeas corpus proceeding, concerns the lawfulness of ICE's re-detention of a noncitizen under a final order of removal to whom the agency had previously granted supervised release. The government argues that the petitioner's re-detention does not violate his due process rights or the Immigration and Nationality Act (the "INA") because he has failed to establish, as required by *Zadvydas v. Davis*, 533 U.S. 678 (2001), that there is no significant likelihood of his removal in the reasonably foreseeable future, and because ICE had broad discretion to revoke his release under the relevant regulation. Vo disputes both that the burden-shifting framework of *Zadvydas* applies to his case and that ICE complied with its own regulations in revoking his release.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 2241. After reviewing the parties' submissions and hearing oral argument, the court agrees with Vo. Because ICE elected to release Vo subject to an order of supervision governed by regulation, it was bound to comply with that regulatory framework in revoking Vo's release. It did not do so. For the reasons that follow, the petition is granted and Vo will be released pursuant to the conditions of his prior order of supervision.

### I. Background[1]

Vo is a native and citizen of Vietnam. He entered the United States in the early 1990's as a refugee and later became a lawful permanent resident. Following a series of criminal convictions, ICE detained Vo in or around October 2009 to determine his removability. In November 2009, an Immigration Judge ordered Vo removed to the Socialist Republic of Vietnam, and ICE thereafter detained Vo for several months while it

---

[1] This background is drawn from Vo's Pet. for Writ of Habeas Corpus (doc. no. 1), the Federal Respondents' Obj. to Habeas Petition (doc. no. 9), Vo's Mot. for Bail Hearing and Provisional Release from Custody (doc. no. 10), the Federal Respondents' Obj. to Mot. for Bail Hearing and Provisional Release from Custody (doc. no. 13), and the attachments thereto, as well as the additional documentation submitted by Vo in response to the Preliminary Order issued by this court on Dec. 12, 2025 (doc. nos. 2, 5).

attempted to effectuate his removal.[2]  The Vietnamese government, however, declined to accept Vo for repatriation.[3]

On March 10, 2010, ICE executed a Release Notification advising Vo that he would be "released from ICE custody pending [his] removal from the United States" based on ICE's "review of [his] case."[4]  ICE conditioned Vo's release on his compliance with certain written conditions set forth in an addendum to the Release Notification and his "maintaining proper behavior" while ICE continued to "make efforts to obtain [his] travel document that will allow the United States to carry out [his] removal."[5]  The Release Notification also required Vo to "to surrender to ICE for removal" once his travel document is secured, at which time he would "be given an opportunity to prepare for an orderly departure."[6]

For the next 11 years, Vo remained in the community and complied with the terms of his order of supervision, including appearing for regular check-ins with ICE.  In October 2025, during a virtual check-in, ICE directed Vo to present himself at its Burlington Field Office.  When he complied, ICE informed Vo that his release had been revoked and detained him.  He remains detained at the Strafford County House of Corrections.

Upon re-detention, Vo received a "Notice of Revocation of Release" that identifies three reasons for ICE's decision to revoke Vo's order of supervision.[7]  First, it states that the "decision [to revoke Vo's release was] made based on a review of [his] official alien file and a determination that there are changed circumstances in [his] case."[8]  Second, it advises that "ICE has determined that [Vo] can be removed from the United States" pursuant to his order of removal.[9]  Third, , it provides that "ICE has determined that the purposes of [his] release have been served and that it is appropriate to enforce [his] removal order."[10]  The notice further informs Vo: "[P]ursuant to 8 [C.F.R §] 241.4, you are to remain in ICE custody at this time.  You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation."[11]  A digital signature dated October 23, 2025 by David T. Wesling, the Field Office Director for ICE's Burlington (MA) appears on the notice.

Vo filed the present petition for a writ of habeas corpus on December 12, 2025, challenging the lawfulness of his renewed detention.  He contends that, because "ICE has not adduced and cannot adduce any facts" to suggest its ability to remove Vo from the

---

[2] Nov. 23, 2009 Order of the Immigration Judge (doc. no. 5-1); Decl. of Hung Thanh Vo (doc. no. 1-1) ¶ 9.

[3] Id. ¶ 9.

[4] Release Notification (doc. no. 5-1).

[5] Id.

[6] Id.

[7] Notice of Revocation of Release (doc. no. 1-2).

[8] Id.  The notice does not detail the specific circumstances or changes to which it refers.

[9] Id.

[10] Id.

[11] Id.

United States has "materially changed" since his release in 2010, his continued detention serves no legitimate immigration purpose and is unlawful under 8 U.S.C. § 1231(a)(6), its implementing regulations, and the Due Process Clause.[12]  *See Zadvydas v. Davis*, 533 U.S. 678, 699-700 (2001) (construing 8 U.S.C. § 1231(a)(6) to limit post-removal-order detention to a period reasonably necessary to secure removal and to prohibit indefinite detention where removal is not reasonably foreseeable).[13]

## II.    Analysis

### A.    Legal framework

Generally speaking, the INA requires that the government secure a noncitizen's removal during the 90-day "removal period" that follows "the entry of a final order of removal against [the] noncitizen."  8 U.S.C. § 1231(a)(1)(A)).  "During the removal period, detention is mandatory."  *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(2)).  After the close of this 90-day window, ICE "may" continue to a detain the noncitizen only if he or she falls into certain enumerated categories; namely, "(1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'"  *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578-79 (2022) (quoting 8 U.S.C. § 1231(a)(6)).  Otherwise, a noncitizen who is not removed within the removal period "shall be subject to supervision under regulations prescribed by the Attorney General."  8 U.S.C. § 1231(a)(3); *see also* 8 C.F.R. § 241.5(a) (setting conditions to be included in an order of supervision).

There are two regulations that govern the release of noncitizens under § 1231(a).  The first, 8 C.F.R. § 241.4, requires that ICE conduct an initial "custody review" for a noncitizen that it seeks to detain beyond the removal period, at the conclusion of which ICE may "release [the noncitizen] under an order of supervision… if it determines that the [noncitizen] would not pose a danger to the public or a risk of flight, without regard to the likelihood of the [noncitizen's] removal in the reasonably foreseeable future."  8 C.F.R. § 241.13(b)(1) (describing the applicability of 8 C.F.R. § 241.4); *see Hall v. Nessinger*, 2026 WL 18583, at *2 (D.R.I. Jan. 2, 2026) (summarizing the individualized "custody review" procedures imposed by § 241.4).  The second, 8 C.F.R. § 241.13, was "promulgated [] following the Supreme Court's decision in *Zadvydas*" and establishes "special review procedures" for a noncitizen detained beyond the removal period who "has provided good reason to believe there is no significant likelihood of removal ... in

---

[12] Pet. (doc. no. 1) ¶¶ 9-11.

[13] ICE officials conducted a custody review of Vo's detention after Vo filed this petition and denied him release, citing Vo's failure to demonstrate that, "if released, [he] [would] not pose a danger to the community, to the safety of other persons, or to property."  Doc. no. 14.  ICE based that finding on the criminal convictions that resulted in Vo's 2009 order of removal.  *See id.* at 1.  ICE's decision does not indicate that Vo subsequently engaged in any criminal activity or otherwise violated the conditions of his order of supervision during his release from ICE custody between 2010 and 2025.

the reasonably foreseeable future." *Hall*, 2026 WL 18583, at *3 (quoting 8 C.F.R. § 241.13(a)); *see Johnson,* 594 U.S. at 529 (describing § 241.13 as "setting out the *Zadvydas* procedures").

ICE may revoke the release of a noncitizen under either regulation, though the procedures required to do so differ slightly. An order of release under § 241.4 may be revoked based on either a violation of the conditions of the release or a discretionary determination by an ICE official that "revocation is in the public interest" because, inter alia, "[t]he purposes of release have been served" or "[i]t is appropriate to enforce a removal order or to commence removal proceedings against a [noncitizen]." 8 C.F.R. § 241.4(l)(1), (l)(2). Alternatively, to revoke an order of release under § 241.13 requires "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)). Regardless as to which form of release is revoked, ICE is required to notify the noncitizen "of the reasons for revocation" and conduct an "initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1); 8 C.F.R. § 241.13(i)(3)).

**B.      Lawfulness of re-detention**

The government frames this case as a straightforward application of *Zadvydas*, arguing that the petition should be denied because Vo has not carried his burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."[14] Because (per the government) Vo has failed to make such a showing, the argument goes, ICE is not violating Vo's constitutional due process rights by detaining him and was within its broad discretionary authority under 8 C.F.R. § 241.4 to revoke his release. That framing misconceives both the posture of this case and the source of the alleged unlawfulness.

As described above, 8 U.S.C. § 1231 provides ICE with two basic options once the removal period has expired: it may continue to detain the noncitizen under § 1231(a)(6), subject to the constitutional limits recognized in *Zadvydas*, or it may release the noncitizen "subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). *Zadvydas* addressed the first option—i.e., the constitutional limits on the government's power to continue holding a noncitizen in custody when removal is not reasonably foreseeable. 533 U.S. at 689-701.

Here, however, the government chose the second option: it released Vo from custody in 2010 under an order of supervision. As discussed *infra*, it is unclear on this record whether Vo was released under §§ 241.4 or 241.13. Regardless, having elected to release Vo, the question presented by this petition is not whether ICE may lawfully *continue* to detain Vo in the first instance under *Zadvydas*, but whether ICE acted lawfully when it *revoked* his supervised release and returned him to custody in October 2025. *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025) (finding *Zadvydas*

---

[14] Obj. to Pet. (doc. no. 9) at 5.

4

inapplicable in similar challenge because *Zadvydas* involved "ICE's authority to detain in the first place upon an issuance of a final order of removal"); *Escalante v. Noem*, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("*Zadvydas*, relied upon by Respondents, dealt with the *initial* detainment of [a noncitizen] awaiting removal."); *see also Hall*, 2026 WL 18583, at *6 ("Critically, the petitioners in *Zadvydas* were never granted supervised release following a final order of removal" (citing *Zadvydas*, 533 U.S. at 701) (citation omitted)).

The First Circuit Court of Appeals has made clear that once ICE releases a noncitizen under § 1231 and its implementing regulations, it may not simply re-detain that person at will.  Rather, re-detention must comply with the regulatory framework that implements *Zadvydas* and § 1231.  *See Kong*, 62 F.4th at 619-20 (explaining that re-detention after a *Zadvydas*-based release requires an individualized determination, based on changed circumstances, that removal has become significantly likely in the reasonably foreseeable future or that another regulatory basis for re-detention exists).  In other words, once the government elects release subject to supervision, it is bound by its own regulations governing revocation.  *See id.* at 619 ("ICE's decision to re-detain a noncitizen like Kong who has been granted supervised release is governed by ICE's own regulation[.]"); *Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017) ("If ICE intended to revoke [a noncitizen's supervised] release, it was required to follow the procedures set out in 8 C.F.R. § 241.4."); *see also id.* at 388 ("ICE, like any agency, 'has the duty to follow its own federal regulations.'" (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003))).  Accordingly, the government's heavy reliance on Vo's alleged failure to satisfy the *Zadvydas* burden is misplaced.  The relevant question is whether ICE complied with the applicable regulations when it revoked Vo's release and returned him to custody.

The parties disagree as to which regulation should control the court's analysis.  Vo argues that the court should look to 8 C.F.R. § 241.13, which governs re-detention after a determination that removal is not significantly likely in the reasonably foreseeable future.[15]  The government does not dispute that ICE released Vo based on its assessment that removal was not significantly likely to occur in the reasonably foreseeable future, but argues that § 241.4 should control the court's analysis because Vo's release was "revoked by [the] Boston Field Office Acting Director."[16]

---

[15] *See* Pet. (doc. no. 1) at 5; Mot. for Bail Hearing (doc. no. 10-1) at 12.

[16] Obj. to Pet. (doc. no. 9) at 8.  At oral argument, the government argued that it is irrelevant whether ICE released Vo in 2010 under 8 C.F.R. § 241.13 because the regulation that governs his re-detention turns on the party that actually revoked his release and not the regulation under which he was granted supervised release in the first place.  The government cited ICE's internal interpretation policy as its sole authority for this argument.  The court is unaware of any judicial support for this interpretation of the revocation procedures set forth by §§ 241.4 and 241.13, and counsel cited none in its filings or at oral argument.  Additionally, though Vo does not raise this argument, it is unclear whether field office directors are authorized to revoke supervised release under 8 C.F.R. § 241.4(l)(2), which grants only the "Executive Associate Commissioner" that authority.  *See Funes v. Francis*, 2025 WL 3263896, at *14

On the present record, it is not entirely clear which regulatory pathway ICE purported to invoke.  The original basis for Vo's release in 2010 is not stated in the Release Notification, which grounds Vo's release only on ICE's "review of [his] case."[17] And while the Notice of Revocation issued in 2025 cites § 241.4, it also cites "changed circumstances in [Vo's] case" as a basis for revocation, which is language that more naturally tracks the text and logic of § 241.13.  *See, e.g., Martinez v. Hyde*, 2025 WL 3719656, at \*1-2 (D. Mass. Dec. 23, 2025) (deducing from ICE's reference to "changed circumstances" when revoking noncitizen's order of supervision that ICE was "invok[ing] 8 C.F.R. § 241.13(i)(2)").

This ambiguity underscores a broader problem: ICE did not clearly articulate the legal or factual basis for its action.  The court therefore need not definitively resolve which regulation governs because the notice of revocation is inadequate under either regime.  As explained above, both §§ 241.4 and 241.13 require, at minimum, that ICE articulate a meaningful, individualized basis for revocation sufficient to give the noncitizen notice of the grounds for re-detention and an opportunity to respond.  *See* 8 C.F.R. § 241.4(l)(2), (l)(3); 8 C.F.R. § 241.13(i); *see also Kong*, 62 F.4th at 619-20 (emphasizing the need for an individualized, fact-based determination tied to changed circumstances); *Rombot*, 296 F. Supp. 3d at 387 ("Upon revocation, [§§] 241.4 and 241.13 both require ICE to provide 'an initial informal interview promptly ... to afford the [noncitizen] an opportunity to respond to the reasons for revocation.'" (citations omitted)); *see also Noem v. Abrego Garcia*, 604 U.S. ---, 145 S. Ct. 1017, 1019 (2025) (Sotomayor, J., statement regarding the Court's disposition of the application) (stating that "in order to revoke conditional release" under 8 C.F.R. § 241.4(l), "the [g]overnment must provide adequate notice and 'promptly' arrange an 'initial informal interview ... to afford the [noncitizen] an opportunity to respond to the reasons for the revocation stated in the notification'").  This requirement is no mere technicality, but rather a core component of the regulatory scheme that implements the constitutional limits courts have recognized in *Zadvydas* and protects against arbitrary re-detention.  *See Jimenez v. Cronen*, 317 F. Supp. 3d 626, 641 (D. Mass. 2018) (detailing INS's stated rationale in publishing 8 C.F.R. § 241.4; namely, that § 241.4 "has the procedural mechanisms that ... courts have sustained against due process challenges" (quoting Detention of Aliens Ordered Removed, 65 F.R. 80281-01, at 80283 (2000)); *see also Bonitto v. ICE*, 547 F. Supp. 2d 747, 757-58 (S.D. Tex. 2008) (explaining that §§ 241.4 and 241.13 "do not merely facilitate internal agency housekeeping, but rather afford important and imperative procedural safeguards to detainees").

Here, the Notice of Revocation does not identify any violation of the conditions of supervision.  Nor does it describe any individualized factual development showing that Vo's removal has become significantly likely in the reasonably foreseeable future.

---

(S.D.N.Y. Nov. 24, 2025) (considering whether an internal ICE memo delegating certain authority to assistant field office directors constitutes a grant of revocation authority under § 241.4(l)(2)).  The court does not address this question.

[17] Release Notification (doc. no. 5-1).

Instead, it makes oblique reference to "changed circumstances in [Vo's] case," states in conclusory fashion that "ICE has determined that [Vo] [could] be removed from the United States," and concludes with "ICE has determined that the purposes of [Vo's] release have been served."  In other words, it quotes language from two different regulations in a manner that offers no meaningful explanation as to the basis for Vo's revocation.  *Compare* 8 C.F.R. § 241.4(l)(2)(i) (permitting revocation of release "when, in the opinion of the revoking official, … "[t]he purposes of release have been served") *with* 8 C.F.R. § 241.13(i)(3) (providing that ICE "may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future").

Courts in this circuit have repeatedly rejected attempts to justify immigration detention or re-detention based on conclusory or post hoc rationales rather than contemporaneous, individualized findings.  *See, e.g.*, *Kong*, 62 F.4th at 619-20; *Nguyen*, 788 F. Supp. 3d at 150, 152 (finding notice of revocation of supervised release insufficient where it stated that the detention decision was "made based on a review of [the noncitizen's] official alien file and a determination that there [were] changed circumstances in [his] case" and that his "case [was] under current review" by his native country "for the issuance of a travel document"); *Hall*, 2026 WL 18583, at *7 (statements in notice of revocation that a decision was made "based on a review of [the noncitizen's file] and a determination that there [were] changed circumstances in [his] case" and that noncitizen's "case [was] currently under review" by his home country deemed "insufficient bases for revoking [noncitizen's] supervised release"); *see also Hashemi v. Noem*, 2025 WL 3468694, at *3 (C.D. Cal. Nov. 19, 2025) (reasoning that, to be regulation-compliant, a notice of revocation is not required to "include any particular magic words; but it must provide real, specific, concrete information that a noncitizen could actually respond to").  Because ICE failed to comply with its own regulations governing the revocation of supervised release, Vo's re-detention is unlawful regardless of whether § 241.4 or § 241.13 ultimately applies.

C.   **Relief**

The government concedes that if the court finds the revocation procedurally defective, "the appropriate remedy is release under the previously ordered conditions."[18]  As applicable law supports this concession, the court agrees and will restore the status quo ante by releasing Vo under his prior order of supervision.  *See, e.g., Rombot*, 296 F. Supp. 3d at 388-89 (ordering petitioner's release after finding that ICE failed to follow the procedures required by § 241.4 in detaining the petitioner); *see also Jimenez*, 317 F. Supp. 3d at 657 (concluding, where ICE failed to comply with § 241.4 in revoking petitioners' release, that "it is most appropriate that the court exercise its equitable

---

[18] Obj. to Mot. for Bail (doc. no. 13).

authority to remedy the violations of petitioners' constitutional rights to due process by promptly deciding itself whether each should be released").[19]

### III.   Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus[20] is **GRANTED.**  The petitioner shall be released pursuant to the conditions in his preexisting order of supervision.


SO ORDERED.

Joseph N. Laplante
United States District Judge


Date: January 27, 2026
cc: Counsel of Record

---

[19] The court notes that this order does not foreclose ICE from pursuing any lawful avenue available to it under the statute and regulations in the future.  It holds only that ICE may not continue to detain Vo on the basis of a revocation that did not comply with the governing regulatory requirements.

[20] Doc. no. 1.